**Affirmed and Opinion filed February 26, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00784-CV

## GARY AARONII, ET AL., Appellants

## V.

## DIRECTORY DISTRIBUTING ASSOCIATES, INC., RICHARD PRICE, STEVE WASHINGTON, LAURA WASHINGTON, ROLAND E. SCHMIDT, SANDY SANDERS, AND AT&T CORPORATION, Appellees

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2011-50578**

# O P I N I O N

In this appeal we address two issues of first impression. The first relates to the potential federal preemption of a Texas venue statute. The second involves the constitutionality of applying the state venue statute in the context of the federal statute's collective-action procedure. Acting under section 15.003 of the Texas

Civil Practice and Remedies Code, which governs venue in civil cases involving multiple plaintiffs, the trial court dismissed, without prejudice, the claims of thousands of "opt-in plaintiffs" in a collective action filed under the federal Fair Labor Standards Act. We affirm the dismissal of the opt-in plaintiffs' claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Various Harris County residents who delivered AT&T telephone directories (hereinafter, the "Named Plaintiffs") asserted claims in the trial court below against appellees Directory Distributing Associates, Inc., AT&T Corporation, and five natural persons (hereinafter, collectively the "Defendants") alleging various violations of the federal Fair Labor Standards Act (hereinafter, the "Act"). The Named Plaintiffs alleged that Directory Distributing Associates, Inc. engaged in a pattern and practice of classifying individuals as independent contractors, when the individuals actually were employees of Directory Distributing Associates, Inc., to avoid paying the individuals the minimum wage and overtime wages to which they were entitled under the Act. The Named Plaintiffs made allegations seeking to invoke the "collective action" procedure under the Act. *See* 29 U.S.C. § 216(b) (West, Westlaw through P.L. 113-234).

The trial court conditionally certified a collective action and ordered that notice be sent to all current and former individuals hired by Directory Distributing Associates, Inc. during the period from June 25, 2009, to November 26, 2012, who were classified as independent contractors and hired to deliver telephone directories. This notice allowed these individuals an opportunity to "opt in" to the collective action by filing written consents. Thousands of individuals, from at least thirty-eight states, availed themselves of this opportunity and filed written notices

of consent to participate as plaintiffs in the collective action, thus "opting in." (hereinafter, collectively, the "Opt-In Plaintiffs").

The Defendants filed a motion to dismiss all Opt-In Plaintiffs who are not Texas residents and who did not deliver telephone directories in Texas (hereinafter, collectively, the "Non-Texas Opt-In Plaintiffs"). There are more than 15,000 Non-Texas Opt-In Plaintiffs. The Defendants asserted that no Texas county is a county of proper venue for the claims of any of these plaintiffs and that, under section 15.003 of the Texas Civil Practice and Remedies Code, entitled "Multiple Plaintiffs and Intervening Plaintiffs," each of the Non-Texas Opt-In Plaintiffs independently must establish proper venue.

The Non-Texas Opt-In Plaintiffs asserted that the collective-action procedure under the Act preempts section 15.003 of the Texas Civil Practice and Remedies Code. The trial court granted the motion to dismiss, and dismissed all of the Non-Texas Opt-In Plaintiffs without prejudice to the refiling of these claims in a court of proper venue that has subject-matter jurisdiction over the claims. The Non-Texas Opt-In Plaintiffs now challenge that ruling in this interlocutory appeal.

## II.    ISSUES AND ANALYSIS

On appeal, the Non-Texas Opt-In Plaintiffs do not assert that they satisfied the requirements of section 15.003. Instead, they argue that section 15.003 does not apply to this case because this state statute is preempted by the collective-action procedure under the Act or, in the alternative, because applying section 15.003 in the context of this case would violate the Privileges and Immunities Clause of the United States Constitution.

3

**A. Preemption Analysis:** *Does the collective-action procedure under the Act preempt section 15.003?*

The Non-Texas Opt-In Plaintiffs assert that the collective-action procedure under the Act impliedly preempts section 15.003(a). The parties have not cited and research has not revealed any federal or state case addressing this specific preemption issue.

Under the Supremacy Clause of the United States Constitution, the laws of the United States are the supreme law of the land, and a state law that conflicts with federal law is preempted and "without effect." U.S. Const. art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). A federal law may expressly preempt state law. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Preemption also may be implied if the scope of the statute indicates that Congress intended federal law to occupy the field exclusively or if state law actually conflicts with federal law. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). A state law presents an actual conflict with federal law when "it is 'impossible for a private party to comply with both state and federal requirements' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Myrick*, 514 U.S. at 287, 115 S.Ct. at 1487 (quoting, respectively, *English v. General Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990) and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). The Non-Texas Opt-In Plaintiffs do not assert that the Act expressly preempts section 15.003(a) or that Congress intended the Act to exclusively

occupy the field.[1]  We need only decide (1) whether it is impossible to comply with both section 15.003(a) and the collective-action procedure of the Act and (2) whether section 15.003(a) stands as an obstacle to the accomplishment and execution of the full purposes of Congress.  *See Myrick*, 514 U.S. at 287; 115 S. Ct. at 1487.

### 1.  The Texts of the Two Statutes

The starting point for the preemption analysis is the relevant texts of the two statutes.[2]  Section 216(b) of the Act, which falls under the "Penalties" provision, reads in its entirety as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. **An action to recover the liability prescribed in either of the preceding**

---

[1] Even if the Non-Texas Opt-In Plaintiffs had advanced these arguments, we would conclude that the arguments lack merit.

[2] In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000).  If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state.  *Id*.  If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words.  *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose.  *See id*.

**sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.** The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

29 U.S.C. § 216(b) (West, Westlaw through P.L. 113-234) (emphasis added). The first two sentences of section 216(b) establish liabilities for an employer who violates various provisions of the Act. *See id*. In the third sentence, Congress provides that an action to recover the liability prescribed in either of the previous sentences may be maintained against an employer in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *See id*. This action against an employer for and on behalf of other employees similarly situated is what is known as a collective action. *See id*. But, rather than providing for an opt-out mechanism, section 216(b) states that, in a collective action, no employee shall be a party plaintiff unless the employee gives consent in writing to become such a party and this consent is filed in the court in which such action is brought. *See id*.

6

The statute also provides that, in addition to any judgment awarded to the plaintiff in such an action, the court shall award the plaintiff a reasonable attorney's fee and costs of the action. *See id*. Section 216(b) also provides that the right provided by that subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor under certain specified circumstances. *See id*. Section 216(b) does not expressly state any venue provision for a collective action or an individual claim based on alleged violations of the Act. The statute does not expressly state that an employee/plaintiff in an action to recover liability for a violation of the Act must comply with any particular venue statute, nor does the statute expressly state that such a plaintiff need not comply with any venue statute. *See id*. Section 216(b) does not state that, if the named plaintiffs in a collective action satisfy the applicable venue statute, then the opt-in plaintiffs need not independently establish venue. *See id*.

Section 15.003(a), part of the venue chapter of the Texas Civil Practice and Remedies Code, provides in its entirety as follows:

> (a) In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:
>
> (1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;
>
> (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a) (West, Westlaw through 2013 3d C.S.). Under section 15.003(a), in a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, or otherwise, each plaintiff, independently of every other plaintiff, must establish proper venue. *See id.* If a plaintiff cannot independently establish proper venue, that plaintiff's claims must be transferred to a Texas county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes each of the four propositions listed in section 15.003(a). *See id.* The statute applies generally to all cases in Texas courts in which there is more than one plaintiff; it does not apply only to a collective action or only to claims for violations of the Act. *See id.*

Section 15.003(a) establishes a neutral state rule for the administration of Texas courts. *See id.* The Defendants moved for dismissal of the Non-Texas Opt-In Plaintiffs' claims, asserting that they had not and could not independently establish proper venue in Harris County or in any other Texas county. *See id.* None of the Non-Texas Opt-In Plaintiffs established each of the four propositions listed in section 15.003(a). *See id.*

Unlike class actions, collective actions require putative class members to opt into the class. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *O'Brien v. Ed*

*Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). Though an unnamed class member in a class action is not a plaintiff, each opt-in plaintiff in a collective action has party status. *See* 29 U.S.C. § 216(b); *O'Brien*, 575 F.3d at 583; *Muhammad v. GBJ, Inc.*, 2011 WL 863785, at *1–2 (S.D. Tex. Mar. 9, 2011). Because the Non-Texas Opt-In Plaintiffs are plaintiffs, section 15.003(a) requires each of them to independently establish proper venue. On appeal, the Non-Texas Opt-In Plaintiffs do not assert that they satisfied the requirements of section 15.003(a). Nor do they assert that the trial court erred in dismissing their claims if section 15.003(a) is not preempted by the collective-action procedure and if that statute does not violate the Privileges and Immunities Clause.

## 2. Whether the Collective-Action Procedure Provides that Opt-In Plaintiffs Need Not Independently Establish Venue

The Non-Texas Opt-In Plaintiffs assert that, under the Act's collective-action procedure, venue is proper if the named plaintiffs satisfy the applicable venue statute and that the opt-in plaintiffs need not independently establish proper venue. They argue that this part of the collective-action procedure conflicts with section 15.003(a)'s requirement that each plaintiff independently of every other plaintiff, establish proper venue. Nowhere in the text of section 216(b) is there a statement that venue is proper over the entire collective action if the named plaintiffs establish proper venue. *See* 29 U.S.C. § 216(b). Congress did not say in section 216(b) that opt-in plaintiffs need not satisfy any venue requirement. *See id*. The Non-Texas Opt-In Plaintiffs assert that, under section 216(b), the only requirements for an employee to opt into a collective action are that the employee be similarly situated to the named plaintiffs and that the employee file a written consent to become a party in the court in which the collective action is pending. Though these are requirements for an employee to opt-in, Congress did not state in

section 216(b) that these are the only requirements or that, though employees who opt-in are plaintiffs, they need not satisfy the state or federal venue requirements that apply to plaintiffs.

The Non-Texas Opt-In Plaintiffs assert that federal courts uniformly have held that venue is proper in a collective action if it is proper for the named plaintiffs, without any independent venue requirement for the opt-in plaintiffs. The Non-Texas Opt-In Plaintiffs cite three cases in support of this proposition: *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 27–28 (D. D.C. 2013); *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 362–65 (D. Conn. 2008); *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004). For reasons explained below, none of these cases is on point.

In *Douglas v. Chariots for Hire*, the district court had conditionally certified a collective action less than three months before the district court ruled on the defendants' venue challenges. *See* 918 F. Supp. 2d 24, 27 (D. D.C. 2013). In its opinion denying the defendants' venue motions, the district court did not mention whether any opt-in plaintiffs had opted-in yet and so become plaintiffs by filing written consents. *See id*. at 27–35. The district court did not rule that any plaintiff could file suit in any federal or state court of competent jurisdiction without regard to any venue requirements; rather, the district court applied the general federal venue statute. *See id*.; *Bredberg v. Long*, 778 F.2d 1285, 1287 (8th Cir. 1985) (stating that there is no special venue provision for claims under the Act and applying the general federal venue statute to claims under the Act). The *Douglas* court concluded that venue was proper because the suit was in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. *See id*. at 27–31. In reaching this conclusion, the district court

discussed venue facts related to both the named plaintiff and to the opt-in plaintiffs in general. *See id*. The *Douglas* court did not address whether any opt-in plaintiff would need to independently establish proper venue. *See id*. at 27–35.

In *Marcus v. American Contract Bridge League*, the district court mentions that the two named plaintiffs invoked the collective-action procedure in their complaint, but the court does not mention whether the court already had determined that a collective action should be conditionally certified or, if so, whether any opt-in plaintiffs had opted-in yet by filing written consents. *See* 562 F. Supp. 2d 360, 361–66 (D. Conn. 2008). Thus, at the time of the court's opinion, there may not have been any opt-in plaintiffs in the case. *See id*. The district court did not rule that any plaintiff could file suit in any federal or state court of competent jurisdiction without regard to any venue requirements; rather, the district court applied the general federal venue statute. *See id*.; *Bredberg*, 778 F.2d at 1287. The *Marcus* court did not address whether any opt-in plaintiff would need to independently establish proper venue. *See Marcus*, 562 F. Supp. 2d at 361–66.

In *Brown v. Money Tree Mortgage, Inc*., the court conditionally certifies a collective action, so, at the time of the opinion, it is likely that no plaintiffs had opted-in, and the court does not mention that there were any opt-in plaintiffs. *See* 222 F.R.D. 676, 678–84 (D. Kan. 2004). The district court did not rule that any plaintiff could file suit in any federal or state court of competent jurisdiction without regard to any venue requirements; rather, the district court applied the general federal venue statute. *See id*.at 682; *Bredberg*, 778 F.2d at 1287. One of the defendant's arguments against conditional certification of a collective action was that venue was not proper in Kansas because the vast majority of the defendant's employees were in Georgia. *See Brown*, 222 F.R.D. at 682. The

11

*Brown* court concluded that venue was proper in Kansas under the general venue statute because a substantial part of the events giving rise to the claims occurred in Kansas. *See id*. The *Brown* court did not state whether it was making this venue determination solely as to the named plaintiff or as to the named plaintiff and the potential opt-in plaintiffs. *See id*. In any event, the defendants' deadline for complaining about improper venue had not yet passed as to any plaintiffs who, in the future, might opt in. *See id*. at 678–84. The *Brown* court did not address whether any opt-in plaintiff would need to independently establish proper venue. *See id*.

The parties have not cited, and research has not revealed, any case in which a court concludes that, under the Act's collective-action procedure, venue is proper as to all opt-in plaintiffs if the named plaintiffs satisfy the applicable venue statute, or that the opt-in plaintiffs need not independently establish proper venue. Research has revealed two published decisions in which a federal district court notes that the opt-in plaintiffs in a collective action are plaintiffs, concludes that these opt-in plaintiffs must comply with the applicable venue statute under the Little Tucker Act, and transfers the claims of all plaintiffs (including all opt-in plaintiffs) who do not satisfy the venue statute to a court in which venue is proper. *See Saraco v. Hallett*, 831 F.Supp. 1154, 1158–65 & n.7 (E.D. Pa. 1993), *aff'd* 61 F.3d 863 (Fed. Cir. 1995); *Brooks v. Weinberger*, 637 F.Supp. 22, 23–25 (D. D.C. 1986).

The Act does not provide that under its collective-action procedure, venue is proper as to all opt-in plaintiffs if the named plaintiffs satisfy the applicable venue statute. The Act does not provide that the opt-in plaintiffs are exempt from compliance with any venue statute that otherwise would apply to them. And, the

12

Act does not provide that the opt-in plaintiffs are relieved from any state-imposed venue requirement that plaintiffs independently establish proper venue.[3] *See* 29 U.S.C. § 216(b); *Saraco*, 831 F.Supp. at 1158–65& n.7; *Brooks*, 637 F.Supp. at 23–25.

### 3. The Effect of the Language Stating that an Action may be Maintained in Any Federal or State Court of Competent Jurisdiction

The Non-Texas Opt-In Plaintiffs also rely upon the statement in section 216(b) that an action may be maintained in any federal or state court of competent jurisdiction. *See* 29 U.S.C. § 216(b). But, this language does not expressly state that no venue statute may be applied to a collective action or that a collective action may be maintained in any state or federal court that has jurisdiction. *See id.* Various courts implicitly have rejected this proposition by holding that actions under section 216(b) must be filed in a district of proper venue under the applicable federal venue statute.[4] *See Bredberg,* 778 F.2d at 1287; *Douglas*, 918 F.

---

[3]The Non-Texas Opt-In Plaintiffs have submitted a post-submission letter brief in which they attach various filings from a nationwide collective action from the United States District Court for the Southern District of Texas, Houston Division. We have reviewed these materials. None of these filings or orders address the issue of whether, under the Act's collective-action procedure, venue is proper as to all opt-in plaintiffs if the named plaintiffs satisfy the applicable venue statute or whether the opt-in plaintiffs need not independently establish proper venue.

[4]The Non-Texas Opt-In Plaintiffs appear to suggest that their statutory interpretation of section 216(b) must be correct because federal courts are adjudicating nationwide collective actions. Even if that is so, it would not mandate the conclusion that under the collective-action procedure, opt-in plaintiffs need not independently satisfy any venue requirements. The cases could involve waiver of venue objections by failure to timely raise them. *See* Fed. R. Civ. P. 12(h). Or, they could be the result of the liberal venue provisions that apply in federal court. *See* 28 U.S.C. § 1391(b) (stating that a "civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"); 28 U.S.C. § 1391(c)(2) (stating that "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal

Supp. 2d at 28; *Marcus*, 562 F. Supp. 2d at 363; *Brown*, 222 F.R.D. at 682; *Saraco*, 831 F.Supp. at 1162–64; *Brooks*, 637 F.Supp. at 24–25.

In addition, in *Munn v. Mohler*, a plaintiff in a Texas district court asserted that language in section 216(b) allowing an action for violations of the Act to be maintained in any court of competent jurisdiction preempted the otherwise applicable Texas venue statute under which venue was proper only in the county of the defendants' residence. *See* 251 S.W.2d 801, 802–03 (Tex. Civ. App.—Waco 1952, no writ). The *Munn* court rejected this preemption argument and held that venue still was mandatory in the county of the defendants' residence. *See id*. The Fourteenth Court of Appeals found the *Munn* court's reasoning persuasive and relied upon it in concluding that language in a Texas statute allowing the filing of another state's judgment in the office of the clerk of "any court of competent jurisdiction of this state" did not speak to venue or make the proceeding not subject to the general Texas venue statute. *See Cantu v. Howard S. Grossman, P.A.*, 251 S.W.3d 731, 740–41 & n.7 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Thus, this court's reasoning in *Cantu* indicates that the language in section 216(b) should not be construed to address venue or to take any opt-in plaintiffs outside the

---

jurisdiction with respect to the civil action in question . . . ."). To the extent that federal venue statutes allow for proper venue in a single court as to a nationwide collective action, that result flows from the federal venue statute, which does not apply in state court. *See Johnson v. Fankell*, 520 U.S. 911, 921, 117 S. Ct. 1800, 1806, 138 L.Ed.2d 108 (1997) (noting that the right to immediate appellate review that allegedly was the basis for preemption of state law had its source not in title 42, section 1983 of the United States Code, but in title 28, section 1291 of the United States Code, which does not apply in state court). In addition, though research has revealed no case in which a court reaches this conclusion, courts or parties might also reach the conclusion that opt-in plaintiffs do not fall within the scope of any applicable federal venue statute. Even if such a conclusion were correct, it would be based on a construction of the potentially applicable federal venue statutes, which do not apply in state court; it would not be based on section 216(b).

14

scope of an otherwise applicable venue statute. *See Cantu*, 251 S.W.3d at 740–41 & n.7; *Munn*, 251 S.W.2d at 802–03. We conclude that, under its unambiguous language, section 216(b) does not preclude application of any venue statute to opt-in plaintiffs in a collective action. *See* 29 U.S.C. § 216(b); *Bredberg*, 778 F.2d at 1287; *Douglas*, 918 F. Supp. 2d at 28; *Marcus*, 562 F. Supp. 2d at 363; *Brown*, 222 F.R.D. at 682; *Saraco*, 831 F.Supp. at 1162–64; *Brooks*, 637 F.Supp. at 24–25; *Cantu*, 251 S.W.3d at 740–41 & n.7; *Munn*, 251 S.W.2d at 802–03.

### 4. *The Full Purposes and Objectives of Congress*

A state law presents an actual conflict with federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Myrick*, 514 U.S. at 287, 115 S.Ct. at 1487 (internal quotations omitted). The Non-Texas Opt-In Plaintiffs suggest that, even looking beyond the text of section 216(b), the full purposes and objectives of Congress included a purpose or objective that opt-in plaintiffs in collective actions not be hindered by any federal or state venue statute that otherwise would apply to them. Presuming for the sake of argument that this court may base its preemption analysis on purposes or objectives of Congress that are not reflected in the unambiguous language of the Act, the cases that the Non-Texas Opt-In Plaintiffs cite do not support this proposition, and our research has not revealed any cases that stand for this proposition. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–73, 110 S.Ct. 482, 486–88, 107 L.Ed.2d 480 (1989); *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 253–57 (3d Cir. 2012).

In *Hoffman-La Roche, Inc.*, the Supreme Court of the United States held that district courts have discretion, in appropriate cases, to implement section 216(b), as incorporated by the Age Discrimination in Employment Act of 1967, by

facilitating notice to potential plaintiffs. *See Hoffman-La Roche, Inc.*, 493 U.S. at 169–73, 110 S.Ct. at 486–88. The high court made several general statements about the benefits of collective actions and the reason why in 1947 Congress added the written-consent requirement for opt-in plaintiffs. *See id*. The high court also stated that "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *See id.*, 493 U.S. at 173, 110 S.Ct. at 488. Nonetheless, as discussed above, the terms of statute do not provide that opt-in plaintiffs need not comply with any venue statute that otherwise would apply to them, or that the opt-in plaintiffs may not be required to independently establish proper venue. In addition, the *Hoffman-La Roche* court did not address any purposes or objectives that Congress had in this regard.[5] *See Hoffman-La Roche, Inc.*, 493 U.S. at 169–73, 110 S.Ct. at 486–88.

### 5. *The Need for the Utmost Caution Before Deciding that Section 216(b) Requires Texas Courts to Entertain the Non-Texas Opt-In Plaintiffs' Claims*

The normal presumption against pre-emption is buttressed by the fact that the trial court's dismissal without prejudice of the Non-Texas Opt-In Plaintiffs' claims rested squarely on a neutral state statute regarding the administration of a state's courts. *See Johnson v. Fankell*, 520 U.S. 911, 918, 117 S. Ct. 1800, 1805, 138 L.Ed.2d 108 (1997); *MCI Sales & Service, Inc. v. Hinton*, 329 S.W.3d 475, 487–89 (Tex. 2010) (discussing the general presumption against pre-emption).

---

[5]Likewise, though the court in *Knepper v. Rite Aid Corp.* discussed the enactment of the Act in 1938 and the 1947 amendments to the Act, it did not address any alleged purposes or objectives that Congress had as to whether opt-in plaintiffs in a collective action need not comply with any venue statute that otherwise would apply to them. *See* 675 F.3d 249, 253–57 (3d Cir. 2012).

When a state court refuses to entertain claims based on a neutral state rule regarding the administration of the courts, courts must act with utmost caution before deciding that state courts are obligated by federal law to entertain these claims. *See Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805; *Howlett v. Rose*, 496 U.S. 356, 372, 110 S. Ct. 2430, 2440–41, 110 L.Ed.2d 332 (1990). The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the state provide a court in which the federal claims may be presented. *See Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805; *Howlett*, 496 U.S. at 372, 110 S. Ct. at 2441. The general rule, based on the belief in the importance of state control of state judicial procedure, is that "federal law takes the state courts as it finds them." *Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805 (internal quotations omitted); *Howlett*, 496 U.S. at 372, 110 S. Ct. at 2441 (internal quotations omitted). Accordingly, the states have great latitude to establish the structure and jurisdiction of their own courts. *See Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805; *Howlett*, 496 U.S. at 372, 110 S. Ct. at 2441.

When preemption of state law is at issue, we respect the principles that are fundamental to our system of federalism. Under this regime, the state courts share responsibility for the application and enforcement of federal law. *See Fankell*, 520 U.S. at 922, 117 S. Ct. at 1807; *Howlett*, 496 U.S. at 372–73, 110 S. Ct. at 2441. This respect is at its apex when we confront a claim such as the one the Non-Texas Opt-In Plaintiffs make today — that federal law requires Texas to undertake something as fundamental as changing the operation of its courts. *See Fankell*, 520 U.S. at 922, 117 S. Ct. at 1807. These principles do not mean that a federal statute can never preempt a state statute in matters of the administration of the state's courts. *See Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805; *Howlett*, 496 U.S. at

17

372–81, 110 S. Ct. at 2440–45. Still, the Supreme Court of the United States has indicated that we must act with utmost caution before deciding that section 216(b) preempts section 15.003(a). *See Fankell*, 520 U.S. at 919, 117 S. Ct. at 1805; *Howlett*, 496 U.S. at 372, 110 S. Ct. at 2440. Furthermore, though the Non-Texas Opt-In Plaintiffs assert that the procedural rules of section 15.003(a) cannot defeat or unnecessarily burden their federal right to opt into a collective action without any requirement that they independently establish venue, we have concluded that section 216(b) does not provide any such right.[6] Therefore, there is no conflict between section 15.003(a) and section 216(b) in this regard.[7]

### 6. Conclusion

Section 15.003 does not preclude all employees from opting into a collective action filed in a Texas court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). Under section 15.003(a), venue is proper over each opt-in plaintiff's claims if the opt-in plaintiff can independently establish proper venue in the forum county, for

---

[6]Likewise, the Non-Texas Opt-In Plaintiffs assert that section 15.003(a) interferes with the methods by which section 216(b) was designed to reach its goal, but the ability to opt into a collective action without complying with any venue statute that otherwise would apply, or without having to independently establish venue is not a method or means contained in section 216(b).

[7]The Non-Texas Opt-In Plaintiffs rely on the Supreme Court of Texas's decision in *Felder v. Casey*. *See* 487 U.S. 131, 138–41, 108 S.Ct. 2302, 2306–08, 101 L.Ed.2d 123 (1988). The *Felder* case is not on point because the Wisconsin notice-of-claim statute at issue in the case, if followed, would have resulted in immunity from the liability imposed by Congress in title 42, section 1983 of the United States Code. *See id.*, 487 U.S. at 139–44, 108 S.Ct. at 2307–10. Section 15.003(a) does not immunize from liability any conduct that is actionable under the section 216(b). *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). A transfer or dismissal under section 15.003(a) does not determine the outcome on the merits of any federal claim under section 216(b). *See id*. Therefore, the effect of section 15.003(a) is materially different from the effect of the Wisconsin statute in *Felder*. *See Fankell*, 520 U.S. at 920, 117 S. Ct. at 1805–06 (distinguishing *Felder* on a similar basis).

example based on the defendant's residence when the claim accrued, if the defendant is a natural person, or based on the defendant's principal office in Texas, if the defendant is not a natural person. *See id*. §§ 15.002, 15.003(a) (West, Westlaw through 2013 3d C.S.). If there are claims against more than one defendant, a plaintiff may establish proper venue as to all claims against the defendants arising out of the same transaction, occurrence, or series of transactions or occurrences simply by establishing proper venue as to one of the defendants. *See id*. §§ 15.005 (West, Westlaw through 2013 3d C.S.). If a corporate employer has a principal office in Texas, the application of section 15.003(a) does not prevent the maintenance of a nationwide collective action against the employer in the county in which this office is located.[8] *See id*. §§ 15.002, 15.003(a). If employees seeking to opt into a collective action cannot independently establish proper venue, they still may litigate their claims in the forum court if they independently establish the four elements listed in section 15.003(a). *See id*. §15.003(a). For employees who cannot do so, trial courts may transfer the claims to a county of proper venue in Texas, or dismiss the claims without prejudice to refiling them in a court of proper venue.[9] *See id*. §15.003(a).

We conclude that it is not impossible to comply with both section 15.003(a) and the collective-action procedure of the Act and that section 15.003(a) does not

---

[8]The Non-Texas Opt-In Plaintiffs do not argue on appeal that venue was proper as to any of their claims in Harris County if section 15.003(a) is not preempted by the collective-action procedure or if that statute does not violate the Privileges and Immunities Clause.

[9]The Non-Texas Opt-In Plaintiffs do not argue on appeal that venue was proper as to any of their claims in any Texas county or that the trial court erred in dismissing their claims without prejudice to refiling these claims in a court of proper venue and subject-matter jurisdiction, if section 15.003(a) is not preempted by the collective-action procedure and if that statute does not violate the Privileges and Immunities Clause.

stand as an obstacle to the accomplishment and execution of the full purposes of Congress. *See Fankell*, 520 U.S. at 917–23, 117 S. Ct. at 1804–07; *Myrick*, 514 U.S. at 287; 115 S. Ct. at 1487. Accordingly, the trial court did not err in implicitly rejecting the Non-Texas Opt-In Plaintiffs' assertion that the collective-action procedure of the Act preempts section 15.003(a) so as to preclude dismissal of their claims.[10]

## B. Constitutional Analysis: *Should this court reverse the trial court's order because section 15.003 allegedly violates the Privileges and Immunities Clause?*

On appeal, the Non-Texas Opt-In Plaintiffs argue that, even if section 216(b) does not preempt section 15.003(a), applying the state venue statute in this context would violate the Privileges and Immunities Clause of the United States

---

[10]The Non-Texas Opt-In Plaintiffs state that the Defendants acknowledged in their motion to dismiss that the collective-action procedure authorizes them to bring to Harris County cases that otherwise could not be brought there. But, in this part of the motion, the Defendants said that the Non-Texas Opt-In Plaintiffs were attempting to bring claims in Harris County that could not be brought there; the Defendants did not say that the collective-action procedures authorized this action. The Non-Texas Opt-In Plaintiffs also assert that the Defendants do not deny that the collective-action statute conflicts with section 15.003(a) and that section 216(b) provides that the opt-in plaintiffs need not independently establish proper venue. An appellee's failure to respond or to deny an appellant's legal argument does not operate as an admission, nor does it establish the validity of the argument. The trial court granted the Defendants' motion to dismiss under section 15.003(a). On appeal, we conclude the trial court did not err in dismissing without prejudice under section 15.003(a) the Non-Texas Opt-In Plaintiffs' claims. The Defendants assert that we should affirm the trial court's order. They argue that section 216(b) does not preempt section 15.003(a) and that the Non-Texas Opt-In Plaintiffs did not preserve error in the trial court as to the alleged violation of the Privileges and Immunities Clause. In any event, even if the Defendants had conceded on appeal that venue is proper as to all opt-in plaintiffs if the named plaintiffs satisfy the applicable venue statute or that section 216(b) provides that the opt-in plaintiffs need not independently establish proper venue, this concession would not be binding on this court, and we still would have to determine independently whether this concession is correct. *See Flowers v. Flowers*, 407 S.W.3d 452, 457, n.2 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Constitution by denying access to Texas courts to employees who do not reside in Texas, while permitting access to employees who reside in Texas. *See* U.S. Const. Art. IV, § 2, c1. 1 (stating that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States"). Thus, the Non-Texas Opt-In Plaintiffs are asserting that section 15.003(a) is unconstitutional as applied.[11]

The Defendants assert that the Non-Texas Opt-In Plaintiffs failed to preserve error in the trial court. The alleged constitutional violation that the Non-Texas Opt-In Plaintiffs assert does not fall within the narrow scope of the fundamental error doctrine recognized by the Supreme Court of Texas. *See In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003). The Non-Texas Opt-In Plaintiffs were required to preserve error in the trial court to be heard on this complaint on appeal. They did not voice this complaint in their response in opposition to the Defendants' motion to dismiss or at the hearing on that motion. Nonetheless, the Non-Texas Opt-In Plaintiffs assert that they preserved error in their sur-reply to the motion to dismiss, which the trial court considered before granting the motion to dismiss. In the sur-reply they presented further briefing on their preemption argument. They discussed a case that contained a statement that "[t]o deny citizens from other states, suitors under F.E.L.A., access to its courts would, if it permitted access to its own citizens, violate the Privileges and Immunities Clause." *Miles v. Illinois Cent. R. Co.*, 315 U.S. 698, 704, 62 S.Ct. 827, 830, 86 L.Ed.2d 1129 (1942). They asserted there was a parallel between *Miles* and this case and argued that the Defendants claim that section 15.003(a) can constitutionally bar residents of other

---

[11]The Non-Texas Opt-In Plaintiffs are not asserting that section 15.003(a) is unconstitutional on its face. Even if they had made this argument, it would lack merit.

states from Texas courts, even though Congress has not done so. The Non-Texas Opt-In Plaintiffs stated that to sustain the Defendants' argument would offend not only the Supremacy Clause, but also the Privileges and Immunities Clause. We presume for the sake of argument that they preserved error in the trial court regarding their argument that section 15.003(a), as applied in this case, violates the Privileges and Immunities Clause.

We presume that section 15.003(a) is constitutional. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995). As the parties challenging the constitutionality of a statute as applied, the Non-Texas Opt-In Plaintiffs had the burden of proving all facts necessary to show that the statute is unconstitutional as applied to them. *See id.*; *Teel v. Shifflett*, 309 S.W.3d 597, 601 (Tex. App.— Houston [14th Dist.] 2010, pet. denied). If the Non-Texas Opt-In Plaintiffs could establish the four elements listed in section 15.003(a), then they would be able to maintain their claims in the trial court even if they could not independently establish proper venue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). To show that section 15.003(a) violates the Privileges and Immunities Clause as applied, by preventing them from opting into this collective action, they had the burden of proving that section 15.003(a) required the transfer or dismissal of their claims. *See id.*; *Edgewood Indep. Sch. Dist.*, 917 S.W.2d at 725; *Teel*, 309 S.W.3d at 601. This means, among other things, that they would need to prove that they could not establish the four items listed in section 15.003(a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a); *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 602–03 (Tex. 1999); *Edgewood Indep. Sch. Dist.*, 917 S.W.2d at 725; *Teel*, 309 S.W.3d at 601.

In their response to the Defendants' motion, the Non-Texas Opt-In Plaintiffs

22

claimed, in the alternative, that they could satisfy each of these four elements. But, they did not submit any evidence at all in response to the Defendants' motion to dismiss. After reviewing the record, we conclude that the Non-Texas Opt-In Plaintiffs did not prove that they could not establish the four elements listed in section 15.003(a). Therefore, they did not prove all facts necessary to show that, as applied to them, section 15.003(a) violates the Privileges and Immunities Clause. *See Teel*, 309 S.W.3d at 601 (concluding appellant did not prove all facts necessary to show that, as applied to her, the statutes in question unconstitutionally deprived her of the right to a jury trial); *Tex-Air Helicopters, Inc.*, 76 S.W.3d at 584–88 (holding party challenging constitutionality of statute did not prove all facts necessary to show that the statute was unconstitutional as applied). Accordingly, presuming that the Non-Texas Opt-In Plaintiffs preserved error in the trial court on a complaint that, as applied to them, section 15.003(a) violates the Privileges and Immunities Clause, the trial court did not err in impliedly rejecting that complaint.[12]

### III. CONCLUSION

It is not impossible to comply with both section 15.003(a) and the collective-action procedure of the Act. The Texas venue statute does not stand as an obstacle to the accomplishment and execution of the full purposes of Congress. The trial court did not err in implicitly rejecting the Non-Texas Opt-In Plaintiffs' assertion that the collective-action procedure of the Act preempts section 15.003(a) so as to

---

[12]Even if the Non-Texas Opt-In Plaintiff had shown that they could not establish the four items listed in section 15.003(a), we still would conclude that, as applied to them, section 15.003(a) does not violate the Privileges and Immunities Clause.

preclude dismissal of their claims.[13]   Presuming that the Non-Texas Opt-In Plaintiffs preserved error in the trial court on a complaint that, as applied to them, section 15.003(a) violates the Privileges and Immunities Clause, the trial court did not err in impliedly rejecting this constitutional complaint because they did not prove all facts necessary to show such a violation.

We overrule the Non-Texas Opt-In Plaintiffs' sole appellate issue and affirm the trial court's order granting the Defendants' motion to dismiss under section 15.003(a).


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.

---

[13] We need not and do not address the Defendants' argument that the Non-Texas Opt-In Plaintiffs needed to present evidence in the trial court regarding the four items listed in section 15.003(a) for the trial court to have any opportunity to conclude that section 216(b) preempts section 15.003(a).